IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GLENN SCHMEDES,                    )          CV. NO. 08-00331 DAE-LEK
                                   )
            Plaintiff,             )
                                   )
     vs.                           )
                                   )
KELLY MONIZ; COUNTY OF             )
HAWAII; and DOE DEFENDANTS         )
1-10,                              )
                                   )
            Defendants.            )
_____   )

ORDER GRANTING COUNTY OF HAWAII'S MOTION
FOR SUMMARY JUDGMENT

On October 21, 2009, the Court heard Defendant County of Hawaii's

Motion.  Steven Strauss, Esq., appeared at the hearing on behalf of Plaintiff;

Michael Udovic, Deputy Corporation Counsel, and Brooks Bancort, Deputy

Corporation Counsel, appeared at the hearing on behalf of Defendant.  After

reviewing the motion and the supporting and opposing memoranda, the Court

**GRANTS** Defendant County of Hawaii's Motion for Summary Judgment.  (Doc. #

81.)

<u>BACKGROUND</u>

This case arises out of Plaintiff Glenn Schmedes's ("Plaintiff") arrest on July 20, 2006 by County of Hawaii Police.  On July 28, 2008, Plaintiff filed this action for alleged violation of his constitutional rights, assault, false arrest, and municipality liability under 42 U.S.C. § 1983 against the County of Hawaii ("County"), Officer Kelly Moniz, and other unnamed defendants.  It is undisputed that Plaintiff was driving a truck in Hilo and was pulled over by Police Officer Kelly Moniz at approximately 9:00 p.m. on July 20, 2006, and was thereafter arrested.  It is also undisputed that Plaintiff received a cut on his forehead.  Almost all other facts pertaining to the incidents of the arrest, including whether Plaintiff was combative and confrontational during the incident and whether Officer Moniz used excessive force, are disputed.[1]

In this Court's April 21, 2009 Order (the "April 2009 Order"), the Court reviewed the allegations made by Plaintiff and Officer Moniz as to each other's behavior prior to and during the arrest.  (Doc. # 47.)  In that Order, this

---

[1] Plaintiff claims that the individual defendants "beat Plaintiff unconscious, lacerated Plaintiff's forehead, and wrenched Plaintiff's left upper arm from its shoulder socket and then fractured the humeral head and humeral neck of Plaintiff's arm bone in multiple places."  (Doc. # 1 at 3.)  According to Plaintiff, these injuries required "surgical removal of portions of his humerus and replacement with a prosthetic humeral head structure."  (<u>Id.</u>)

Court denied Officer Moniz's motion for summary judgment.  The Court could not

"determine as a matter of law that a reasonable officer would have believed that the

force used was not excessive."  (Id. at 14.)

In the April 2009 Order, the Court also granted Plaintiff's request for

a continuance of the County's motion for summary judgment pursuant to Rule

56(f).  (Id. at 19.)  The Court determined that "Plaintiff has not provided evidence

to create a genuine issue fact that he could establish municipal liability [against the

County.]"  (Id. at 17.)  Plaintiff stated that he intended to take depositions and seek

discovery of evidence, such as training materials, regarding the County's arrest

control techniques, including the "arm bar take down and prone control" technique

that the County teaches its officers.

On September 3, 2009, the County filed the instant motion for

summary judgment, again on the grounds that it has no liability under 42 U.S.C.

§ 1983.  (Doc. # 81.)  On October 8, 2009, Plaintiff filed his Opposition.[2]  (Doc.

# 85.)  On October 15, 2009, the County filed its Reply.  (Doc. # 101.)

---

[2] On October 19, 2009, one day prior to the hearing on this matter and without leave of the Court, Plaintiff filed an Amended Memorandum in Opposition.  (Doc. # 107.)  The Court will not consider this amended memorandum for two reasons:  (1) the amended memorandum was submitted one day prior to the hearing and after the County had already submitted its Reply, therefore the County did not have an opportunity to respond; and (2) the amended memorandum was submitted without leave of Court pursuant to Local Rule 7.4.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  "A material fact is one which may affect the outcome of the litigation."  <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282 (9th Cir. 1979).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  In other words, the moving party satisfies its burden under Rule 56 by demonstrating "that there is an absence of evidence to support the non-moving party's case."  <u>Id.</u> at 325.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099,

1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial'" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).  "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.  The issue of material fact need not be "'resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing version of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank, 391 U.S. at 288-89).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

In Count IV of the Complaint, Plaintiff alleges that the County failed to properly train, supervise, and discipline Moniz and other unnamed defendants, and failed to respond to "citizen complaints of police misconduct comprising excessive use of force, thereby demonstrating its deliberate indifference."  (Compl. at 6.)  The County moves for summary judgment on the grounds that it has no

unconstitutional policy statements, ordinances, regulations, or decisions formally

adopted and promulgated by County rule makers; no unconstitutional "custom or

usage"; nor an unconstitutional policy or custom of inadequate training,

supervision, or discipline and therefore cannot be held liable pursuant to 42 U.S.C.

§ 1983.  (Mot. at 2.)

   For reasons set forth below, the County's motion for summary

judgment is GRANTED.

   A. <u>Municipal Liability Under 42 U.S.C. § 1983</u>

   A municipality cannot be held liable pursuant to section 1983 under a

theory of respondeat superior liability.  <u>Monell v. Dep't of Social Servs. of City of</u>

<u>N.Y.</u>, 436 U.S. 658, 691 (1978 ) ("a municipality cannot be held liable solely

because it employs a tortfeasor-or, in other words, a municipality cannot be held

liable under § 1983 on a respondeat superior theory.").  The Supreme Court has

held that municipalities may be held liable as "persons" under section 1983 "when

execution of a government's policy or custom, whether made by its lawmakers or

by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury."  <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (quoting <u>Monell</u>, 436

U.S. at 694).  "A plaintiff may also establish municipal liability by demonstrating

that (1) the constitutional tort was the result of a 'longstanding practice or custom

which constitutes the standard operating procedure of the local government entity;'

(2) the tortfeasor was an official whose acts fairly represent official policy such

that the challenged action constituted official policy; or (3) an official with final

policy-making authority 'delegated that authority to, or ratified the decision of, a

subordinate.'" Price, 513 F.3d at 966 (quoting Ulrich v. City & County of San

Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)).

Liability has also been established when the unconstitutional act of an

officer was:  "(1) the direct result of inadequate police training or supervision; (2)

the product of an officially adopted policy statement, ordinance, regulation, or

decisions; or (3) illustrative of a custom which is so permanent and well-settled to

constitute a custom or usage with the force of law."  Sunn v. City & County of

Honolulu, 852 F. Supp. 903, 909 (D. Haw. 1994).

Where a claim is based upon a failure to properly train police officers,

liability may be imposed "only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact."

Price, 513 F.3d at 973 (citations omitted).  To prove deliberate indifference, a

plaintiff must demonstrate that the county made a conscious or deliberate choice

"to risk a 'likely' violation of constitutional rights."  Id.  "[This] standard is

objective in that it does permit a fact finder to infer 'constructive' notice of the risk

where it was 'obvious'-but this is another way of saying that there needs to be some evidence that tends to show a conscious choice." Id.  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410 (1997).

> The Supreme Court has explained that
>
> a deficient training "program," [is] necessarily intended to apply over time to multiple employees. Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the "deliberate indifference"-necessary to trigger municipal liability.

Id. at 407 (citation omitted); see also Otani v. City & County of Hawaii, 126 F. Supp. 2d 1299, 1304 (D. Haw. 1998) ("[T]he County can be held liable under Section 1983 for its failure to properly supervise or train its employees where such failure evidences a deliberate indifference to the constitutional rights of Plaintiff.")

B.    The County's Liability

At the outset, the Court notes that whether there was an underlying constitutional violation in this case, i.e., Officer Moniz's alleged excessive use of force, has not been resolved.  There can be no municipal liability if Plaintiff has not suffered a constitutional injury.  See Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996); Palmerin v. City of Riverside, 794 F.2d 1409, 1414-15 (9th Cir. 1986)  Even if a constitutional violation by Officer Moniz is established, however, the Court finds no municipal liability for the County for the reasons set forth below.

The majority of the facts disputed by Plaintiff in his Concise Statement of Facts ("CSOF") pertain to the arrest and surrounding incidents; however, these incidents are relevant to Plaintiff's individual claim against Officer Moniz and not directly relevant to Plaintiff's claim against the County.  Even if Plaintiff were to prevail in his case against Officer Moniz, Plaintiff would still need to meet his burden to show that the County has liability under section 1983. Plaintiff does not dispute the training manuals offered as evidence by the County, nor the policies offered as evidence by the County.

Plaintiff's Complaint asserts nothing more than a single allegedly tortious incident.  A municipality cannot be held liable in tort simply because it

employs a tortfeasor.  See Monell, 436 U.S. at 684.  Further, Plaintiff "cannot

prove the existence of a municipal policy or custom based solely on the occurrence

of a single incident of unconstitutional action by a non-policymaking employee."

Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989) (second emphasis

added).  It is undisputed that Officer Moniz is not a policy maker.

        Moreover, the County's policy guidelines submitted as evidence

indicate that the County's policies discourage excessive use of physical force.  For

example, Hawaii Police Department ("HPD") General Order No. 606 provides

guidelines for managing arrested persons.  These guidelines require that "[i]n

making arrests, members shall strictly observe all laws, policies and procedures

prescribed by the department, the United States Constitution, Hawaii Revised

Statutes, and judicial rulings."  (Def.'s CSOF Ex. 4 at 1.)  Officers are instructed to

"be cautious in the arrest and detention of prisoners and shall take all necessary

precautions to prevent escape, injury to themselves or any other person," and to not

use "more restraint than is necessary and proper for his arrest and detention."  (Id.

at 3.)  "An arrested person shall be treated humanely."  (Id. at 4.)  General Order

No. 804 reflects the parameters on use of force as set by Hawaii statute.  (Def.'s

CSOF Ex. 5.)  This Order also prohibits certain activities, such as any type of

carotid and neck restrain choke holds.  (Id. at 5.)

These guidelines must be read in light of the fact that Hawaii law explicitly permits use of force to effect an arrest.  (Mot. Ex. 1-2.)  See Haw. Rev. Stat. § 703-307(1) ("[T]he use of force upon or toward the person . . . is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest."); Haw. Rev. Stat. § 803-7 ("In all cases where the person arrested refuses to submit or attempts to escape, such degree of force may be used as is necessary to compel the person to submission.")

Plaintiff does not dispute that HPD has these policy guidelines.  Nor does Plaintiff offer any evidence of any longstanding practice or custom resulting in the alleged constitutional tort.  See Price, 513 F.3d at 966.  In fact, Plaintiff disputes the fact that Officer Moniz followed HPD procedures in placing Plaintiff under arrest, thereby seemingly undermining Plaintiff's entire case against the County.  (CSOF at 2.)

The Court granted Plaintiff a continuance so that Plaintiff might conduct discovery of evidence to establish a constitutional violation, but Plaintiff has failed to satisfy his burden.  Plaintiff attaches the HPD "Arrest Control Techniques" manual, but even this exhibit tends to support the County's position. For example, the introductory section of Chapter 3, "concept of pain compliance,"

12

states:  "The officer must be very sensitive to the amount of pain he/she is administering to a suspect.  Too much pain can cause the subject to react to so violently to escape the pain that the officer may have difficulty in maintaining control of the suspect."  (Opp'n Ex. C at 3-1.)  The manual describes how officers are trained with their partners, in order that the officers "practice the techniques until [they] are comfortable and ensure that [they] <u>understand the limits</u> that [they] are able to reach <u>without injury to each other</u>."  (<u>Id.</u>) (emphasis added)

Plaintiff's remaining argument is that the County was aware that its training and lack of refresher courses was inadequate and may lead to violations of constitutional rights.  (Mot. at 3.)  A claim based upon a failure to train requires deliberate indifference to the rights of persons with whom police come into contact.  <u>Price</u>, 513 F.3d at 973.  This requires a conscious or deliberate choice on the part of the County to risk a "<u>likely</u> violation of constitutional rights."  <u>Id.</u> (emphasis added).  Plaintiff has offered no evidence that policymakers at the County were conscious of a <u>likely</u> violation of constitutional rights and then deliberately disregarded the likeliness of that violation.

Plaintiff offers the depositions of Officer Moniz, Sergeant Farias, and Fabian Loo.  (Opp'n Ex. B, D, E.)  Loo states in his deposition that it is "insufficient training" for an officer to be trained at the academy without

13

subsequent trainings.  (Opp'n Ex. D at 56.)  Farias, who administers the officer

training, corroborates Loo's statements to the extent that Farias is unaware of any

retraining program for HPD officers.  (Opp'n Ex. B at 19-21.)  Significantly,

however, Farias also testifies that he has never received reports about officers

alleging insufficiencies in their training.  (Id. at 19.)

Officer Moniz stated that, since his original arrest control technique

training, he has not received any further hands-on training.  (Opp'n Ex. E at 18.)

Officer Moniz did, however, receive "refresher" training in the form of briefings

lasting approximately 15 minutes.  (Id. at 17-18.)  Officer Moniz has had possibly

two of these refresher trainings.  (Id. at 18.)

It may very well be that HPD does not have the type of retraining that

Plaintiff, and Plaintiff's witnesses, would prefer.  Plaintiff's witnesses may believe

that more should be given to officers than the 15 minute "refresher" training.  This,

however, is not the standard required for this Court to find deliberate indifference,

or any causal connection between Officer Moniz's initial training, the "refresher"

training, and the incident.  Any causal connection is pure speculation by Plaintiff.

Even assuming it is true that there is no retraining for officers,

Plaintiff has not met his burden.  Plaintiff asserts that the County "knows or should

know that the misapplication of arrest control techniques may cause injury to

14

suspects and may result in constitutional violations." (Opp'n at 11.) But this allegation, even if true, fails on its face. Whether a technique "may" cause injury is not the standard; established Ninth Circuit law requires that a defendant make a choice to risk a constitutional violation that is likely. Price, 513 F.3d at 973.

Plaintiff compares the facts of this case to three out-of-district cases, Sikorski v. Whorton, 631 F. Supp. 2d 1327 (D. Nev. 2009), Walker v. Norris, 917 F.2d 1449 (6th Cir. 1990), and Hokenberry v. Village of Carrollton, 110 F. Supp. 2d 597, 602 (N.D. Ohio 2000), in an attempt to highlight the alleged deficiencies of HPD training. (Opp'n at 13-14.) Not only are these cases not controlling on this Court, but neither address whether retraining is actually required, or whether HPD's purported failure to retrain amounted to deliberate indifference. See City of Canton v. Harris, 489 U.S. 378, 388, 390 (1989) (liability when failure to train amounts to deliberate indifference or when employees "so often violate constitutional rights that the need for further training must have been plainly obvious to . . . policymakers") The fact that other departments offer more refresher training than HPD is insufficient to raise an issue of fact as to whether HPD failed to adequately train its officers.

Plaintiff also has failed to show that the County, on a persistent and widespread basis, allowed police officers to commit constitutional deprivations in

the past.  Plaintiff does not provide any evidence that the County was aware of prior incidents in which constitutional rights were similarly violated and made a conscious choice to ignore the incidents or program-wide deficiency in training. See Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007); Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train).  There is no evidence that the County knew or should have known that their training approach fails (allegedly) to prevent tortious conduct by employees.  See Bd. of County Com'rs of Bryan County, Okl., 520 U.S. at 407; Otani v. City and County of Hawaii, 126 F. Supp. 2d 1299, 1304 (D. Haw. 1998).

Accordingly, the County's motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant County of Hawaii's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 22, 2009.



_____
David Alan Ezra
United States District Judge

Schmedes v. Moniz et al., CV No. 08-00331 DAE-LEK; ORDER GRANTING COUNTY OF HAWAII'S MOTION FOR SUMMARY JUDGMENT